ACCEPTED
07-14-00393-CV
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
8/28/2015 2:00:49 PM
Vivian Long, Clerk

NO. 07-14-00393-CV

**IN THE COURT OF APPEALS**
**FOR THE SEVENTH DISTRICT OF TEXAS AT AMARILLO**

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
8/28/2015 2:00:49 PM
VIVIAN LONG
CLERK

MAGDALENA MCMORDIE,
in her capacity as Beneficiary and Co-Trustee
of the Hobart B. McMordie, II Asset Management Trust
*Appellant/Cross Appellee*,

v.

CHARLES HARRIS MCMORDIE,
in his capacity as Co-Trustee
of the Hobart B. McMordie, II Asset Management Trust
*Appellee/Cross-Appellant*.

FROM THE 251ST DISTRICT COURT
RANDALL COUNTY, TEXAS
THE HONORABLE ANA ESTEVEZ, JUDGE PRESIDING
CAUSE NO. 66,482-C

**MOTION FOR REHEARING**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

SUMMARY OF ARGUMENTS PRESENTED ........................................................... 1

SUMMARY OF POINTS RELIED UPON ................................................................. 3

ARGUMENTS AND AUTHORITIES ....................................................................... 4

    I.    The Court Should Reconsider its Memorandum Opinion Because it Takes into Account Only Mrs. McMordie's Rights as Beneficiary, Without Acknowledging the Corresponding Issue of Charles' Powers and Duties as Trustee ............................................................................................... 5

    II.   The Court Should Reconsider its Memorandum Opinion Because it Disturbs Hobart's Express Intent, Displacing the Language of the Trust and Rendering Certain Trust Provisions Meaningless ................................ 9

        A.    The Court reads an unintended mandatory distribution standard into the Trust and ultimately disturbs Hobart's express intent ................. 9

        B.    The Court's construction of the Trust fails to give effect to all provisions of the Trust, instead rendering several Trust provisions wholly meaningless in disregard for Hobart's express intent ......... 16

CONCLUSION ........................................................................................................ 18

Appendix A – Memorandum Opinion, dated July 24, 2015

Appendix B – Trust

# TABLE OF AUTHORITIES

## CASES:

*Doherty v. JP Morgan*, 2010 WL 1053053
(Tex. App.—Houston [1st Dist.] 2010, no pet.) ........................................................6

*First National Bank of Beaumont v. Howard*
229 S.W.2d 781, 783 (Tex. 1950).........................................................................13

*Mathis v. Carter*, No. 07-07-0390-CV, 2009 Tex. App. LEXIS 283
(Tex. App.—Amarillo January 15, 2009, no pet.) ....................................................9

*McMordie v. McMordie,* --S.W.3d--, 2015 WL 4536614
(Tex. App.—Amarillo 2015) ...............................................................................1

*Penix v. First National Bank of Paris,* 260 S.W.2d 63
(Tex. Civ. App.—Texarkana 1953, writ ref'd)........................................................6

*State v. Rubion*, 308 S.W.2d 4 (Tex. 1957) ...............................................................9

## RULES AND STATUTES:

Tex. Gov't Code Ann. § 311.016 (Vernon 2005) ....................................................5

Tex. Prop. Code Ann. § 111.004 ...............................................................................5

Tex. Prop. Code Ann. § 113.001 ...............................................................................5

Tex. Prop. Code Ann. § 113.002 ...............................................................................5

Tex. Prop. Code Ann. § 116.001 ......................................................................14, 15

U.S.C. § 2056(b)(7) ................................................................................................13

## SUMMARY OF ARGUMENTS PRESENTED

As stated by the Court in its Memorandum Opinion, "when construing all written instruments, we interpret the trust document by attempting to garner the intent of the person who created it, as that intent is expressed within the four corners of the document. That process obligates us to harmonize the terms of the instrument, give effect to all of its parts, and avoid rendering any provision meaningless."[1] The Court's Opinion however, neither garners the intent of Hobart B. McMordie, the Trust's creator, nor does it harmonize the terms of the Trust. Instead, the Court has replaced the judgment of the Trial Court with a decision that (i) does not take into account critical principles of trust construction or administration; (ii) renders meaningless certain trust provisions; and (iii) disregards Hobart's deliberate and specific wishes concerning disposition of his property during his lifetime and following his death.[2]

The result of the Court's Opinion is to create a third class of Trust property which, until demanded, exists as neither income nor principal, and then ascribe an income-like (mandatory) distribution standard to that property. In doing so, the Court preserves only Mrs. McMordie's right to demand without regard for the Trustees' reciprocal power or duty of distribution. Under this ruling, the Court

---

[1] Memorandum Opinion, dated July 24, 2015, pg. 4 (internal citations omitted), attached hereto as Appendix A.

[2] *See McMordie v. McMordie*, -- S.W.3d --, 2015 WL 4536614 (Tex. App.—Amarillo 2015).

appears to disregard not only basic principles of trust construction and administration, but also Hobart's intent as the settlor of the Trust. If the accumulated but undistributed income is classified as neither income nor principal, but is treated like income upon demand, how should it be treated between the time of its accumulation and the time at which it is demanded? If treated like principal, as intended by Hobart, then the discretionary distribution standard alone would preclude Mrs. McMordie from receiving Trust property solely upon demand. But if treated like income, as suggested by the Court, this property is subject to a mandatory distribution standard which would have necessarily required Hobart to distribute same to Mrs. McMordie anytime she demanded, leaving this amorphous class of Trust property vulnerable to claims by Mrs. McMordie's creditors and taxable at her death. Would Hobart have intended such a result? Absolutely not.

The Court should withdraw its Memorandum Opinion and enter a new opinion affirming the Trial Court's declarations in Charles' favor—which include those requested by Charles and granted, as well as those requested by Mrs. McMordie and denied, and reversing the Trial Court's denial of Charles' requested declarations and its granting of two declarations requested by Mrs. McMordie.

## SUMMARY OF POINTS RELIED UPON

Pursuant to Texas Rule of Appellate Procedure 64.2, Appellee/Cross-Appellant identifies the following as the points relied upon in support of this Motion for Rehearing:

1. The Court erred in reversing and modifying the judgment of the Trial Court because it determined Mrs. McMordie's right to receive accumulated but undistributed income by considering only her right to demand while declining to consider the reciprocal issue of the Trustees' powers and duties to distribute same in contravention of the Texas Trust Code.

2. The Court erred in reversing and modifying the judgment of the Trial Court because its modification failed to give effect to the intent of Hobart as Trustor—instead ignoring certain Trust language, reading language into the Trust, and rendering certain provisions of the Trust meaningless.

## ARGUMENTS AND AUTHORITIES

On July 24, 2015, this Court erroneously reversed the Trial Court's judgment "to the extent it held that a beneficiary's demand for receipt of undistributed income [ ] did not obligate its trustees to comply with and satisfy that demand," and modified the Trial Court's judgment to read that the language within Article VI, Paragraph B of the Trust stating that "either Beneficiary may make demands anytime thereafter to receive said income" means "(1) the undistributed income remains subject to the demand of a beneficiary even though previously added to the trust principal, (2) the beneficiary has the right to demand payment of undistributed income whenever he or she cares to, and (3) the trustees must distribute that income upon a beneficiary's demand."[3] To create a third class of trust property and fashion an unintended, unilateral right to receive a distribution of that property however, is contrary not only to well established principles of trust construction and administration, but also to the express intent of Hobart, the Trust's creator.

Appellee/Cross-Appellant therefore urges this Court to consider Mrs. McMordie's rights as Beneficiary in conjunction with the Trustees' powers and duties as intended by the Trust Code and withdraw its Memorandum Opinion so as to give due effect to both the language of the Trust and Hobart's express intent.

---

[3] *See* Appx. A, Memorandum Opinion, dated July 24, 2015, pg. 9.

I. THE COURT SHOULD RECONSIDER ITS MEMORANDUM OPINION BECAUSE IT TAKES INTO ACCOUNT ONLY MRS. MCMORDIE'S RIGHTS AS BENEFICIARY, WITHOUT ACKNOWLEDGING THE CORRESPONDING ISSUE OF CHARLES' POWERS AND DUTIES AS TRUSTEE.

Trusts, by their very nature, do not confer unilateral powers upon a beneficiary to receive trust distributions upon demand.[4] The receipt of demanded distributions occurs as a result of the synchronicity of a beneficiary's right to demand and a trustee's power (or duty) to distribute.[5] As evidenced by the plain language of the Texas Trust Code, a beneficiary plays no role in administrative matters arising in connection with a trust, including the matter of trust distributions. It is the trustee(s) and the trustee(s) alone who are charged with exercising specific powers and duties in carrying out the purpose of the trust.[6] The administrative role of a beneficiary is statutorily contemplated to be a passive one – nowhere does the Trust Code (or the Trust) charge a beneficiary with the power or the duty to act, whether in the context of receiving a distribution or any other matter of trust administration. Accordingly, distributions of trust property must naturally flow through the trustee as the administrator of the trust. Even a mandatory distribution cannot be effectuated by a

---

[4] Pursuant to Section 111.004 of the Trust Code, a beneficiary is defined as "a person for whose benefit property is held in trust" while a trustee is defined as "the person holding the property in trust." TEX. PROP. CODE ANN. § 111.004. Indeed, for the beneficiary to access the trust property held by the trustee, the trustee must act to make that trust property available to the beneficiary. The beneficiary cannot unilaterally access trust property.

[5] *Id.*

[6] TEX. PROP. CODE ANN. § 113.001, *et seq.*; TEX. PROP. CODE ANN. § 113.002.

beneficiary alone—a trustee must exercise his or her duty to distribute that which is demanded.[7] Indeed, a beneficiary does not have a right to receive trust property upon demand unless the trust confers upon the trustee the corresponding power or duty of distribution. For example, as noted by the Court in its Opinion, "Hobart, himself, had the authority to demand and receive payment of either or both the trust income and principal at his discretion."[8] But the right to receive which inured to Hobart during his lifetime was not derived solely from his "authority to demand," as the Court suggests[9]—it was the product of both his right to demand as well as the Trustees' duty to distribute. Therefore, Mrs. McMordie's receipt of Trust funds upon demand is wholly dependent on the Trustees' reciprocal power (or duty) to distribute that which is demanded.

As framed by the Court in its Opinion, "[t]he controversy before [the Court]

---

[7] In *Doherty v. JP Morgan*, a trust distribution which provided that the trustee "shall also distribute to [the beneficiary] such amounts of principal as she may request to provide for her comfort, health, support, or maintenance" was held to be mandatory and not discretionary. *Doherty v. JP Morgan*, 2010 WL 1053053 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *see* Tex. Gov't Code Ann. Sec. 311.016 (Vernon 2005) ("The following constructions apply unless the context in which the word or phrase appears necessarily requires a different construction or unless a different construction is expressly provided by statute: (1) 'May' creates discretionary authority or grants permission or a power. (2) 'Shall' imposes a duty.") But in *Penix v. First National Bank of Paris*, the court ruled that the trustee was within his discretion to withhold certain trust income despite the language of the trust which stated that "[income] shall be used for support, maintenance, and schooling." *Penix v. First National Bank of Paris*, 260 S.W.2d 63 (Tex. Civ. App.—Texarkana 1953, writ ref'd).

[8] Appx. A, Memorandum Opinion, pg. 4.

[9] In discussing Hobart's right to receive distributions during his lifetime, the Court seems to suggest that Hobart's right to receive was a direct result of his right to demand. However, this is incorrect. Hobart's right to receive was a result of both his right to demand as well as the Trustees' duty to distribute (as mandated by the language "The Trustees *shall distribute*" (emphasis added)).

involves a twofold issue. The first question concerned whether [Mrs. McMordie] was entitled to any income accumulated by the [T]rust but undistributed during the life of Hobart"[10]—in other words, whether Mrs. McMordie had the right to demand the subject Trust property. "The second query pertained to whether that accumulated income was payable to [Mrs. McMordie] upon her 'demand'"—in other words, whether Mrs. McMordie had the right to receive that which was demanded as limited by the Trustees' power or duty to distribute same.[11] While it acknowledges the dual nature of this analysis, the Court declines to address the second query concerning the Trustees' effectuation of a distribution, instead determining Mrs. McMordie's right to receive the distribution based on her right to demand alone. Such a one-sided determination of beneficiary rights is not only inappropriate, but far exceeds the passive role ascribed to beneficiaries by the Trust Code in matters of trust administration such as distribution.

Had the Court considered not only Mrs. McMordie's right to demand a distribution, but also Mrs. McMordie and Charles' shared power or duty as Trustees to distribute as dictated by the Trust Code, the Court would have reached a different conclusion as to whether Mrs. McMordie possessed the right to receive same. Specifically, the Court would have engaged in an analysis as to whether the Trust

---

[10] Appx. A, Memorandum Opinion, pg. 3.
[11] Appx. A, Memorandum Opinion, pg. 3.

instilled in the Trustees the power or the duty to distribute the accumulated but undistributed income demanded by Mrs. McMordie. Instead, the Court assumed (without conducting such an analysis) that the Trust charged the Trustees with the duty to distribute, basing this conclusion solely on an analysis of the Trust language relating to Mrs. McMordie's right to demand without even considering whether the Trustees had a corresponding (discretionary) power or (mandatory) duty to distribute. In particular, the Court interpreted the phrase "to receive" as indicative of Hobart's intent to subject the Trustees to a mandatory distribution standard. But in reality, "to receive" is nothing more than a redundant amplification of Mrs. McMordie's right to demand—indeed, what else would Mrs. McMordie have been demanding if not the receipt of the accumulated income? To say that the phrase "to receive [said income]" "necessarily implies an obligation on the trustees to deliver it once demanded" improperly foregoes any analysis of the Trustees' power or duty to make such a distribution as intended by the Trust Code.

Accordingly, the Court should reconsider its Memorandum Opinion for the purpose of determining Mrs. McMordie's right to receive the accumulated but undistributed income in the context of not only Mrs. McMordie's right to demand as Beneficiary, but also her and Charles' power or duty to distribute same in their capacity as Trustees.

II. THE COURT SHOULD RECONSIDER ITS MEMORANDUM OPINION BECAUSE IT DISTURBS HOBART'S EXPRESS INTENT, DISPLACING THE LANGUAGE OF THE TRUST AND RENDERING CERTAIN TRUST PROVISIONS MEANINGLESS.

The primary focus in interpreting the provisions of a trust is the intent of the settlor.[12] Indeed, as stated by the Court itself, a trust should be interpreted "by attempting to garner the intent of the person who created it, as that intent is expressed within the four corners of the document."[13] In doing so, the Court is obligated to "harmonize the terms of the instrument, give effect to all of its parts, and avoid rendering any provision meaningless."[14] The result of the Court's Memorandum Opinion however, is to overlook the express intent of Hobart, as the Trust's creator, not only displacing the express language of the Trust, but rendering certain Trust provisions meaningless.

A. The Court reads an unintended mandatory distribution standard into the Trust and ultimately disturbs Hobart's express intent.

As discussed above, a beneficiary's right to receive is only as broad as the trustee's power or duty to distribute. Therefore, when Hobart intended for the Beneficiaries' right to receive to be unobstructed by the Trustees' discretion, he included language mandating reciprocal action by the Trustees both during his

---

[12] *See State v. Rubion*, 308 S.W.2d 4 (Tex. 1957).

[13] Appx. A, Memorandum Opinion, pg. 4 (citing *Mathis v. Carter*, No. 07-07-0390-CV, 2009 Tex. App. LEXIS 283, at *2-3 (Tex. App.—Amarillo January 15, 2009, no pet.) (mem. op.)).

[14] *Id.*

lifetime ("[t]he Trustees <u>shall distribute</u> the income and principal…<u>as demanded</u>"[15]) and after ("the Trustees <u>shall distribute</u> all the income at least annually"[16]). This remains true even at the Trust's termination ("the accumulated and undistributed income and principal <u>shall be distributed</u> to the nephews of [Hobart]…and <u>shall not be distributed</u> to the family of [Magdalena]"[17]). Similarly, where the Trustees are charged with other duties, the Trust deliberately mandates their action ("any undistributed income on hand in the Trust at the end of each calendar year <u>shall be added</u> to the principal of the Trust for that year"[18]). Indeed, where Hobart intended for the Trustees to be bound to act (either by effectuating a distribution, or otherwise), the Trust so specifies with clear language.

But the Trust provision at issue does not contain a corresponding mandatory duty on the part of the Trustees to comply with a Beneficiary's demand. Indeed, that provision simply states:

> Any undistributed income on hand in the Trust…<u>shall be added</u> to the principal of the Trust for that year and either Beneficiary <u>may make demands</u> anytime thereafter to receive said income.[19]

The only rights, powers, or duties addressed by this particular Trust provision are (1) the Trustees' duty to add undistributed income to principal at year's end and (2)

---

[15] Trust, VI.B (emphasis added), attached hereto as <u>Appendix B</u>.
[16] Appx. B, Trust, VI.B (emphasis added).
[17] Appx. B, Trust, VI.C (emphasis added).
[18] Appx. B, Trust, VI.B (emphasis added).
[19] Appx. B, Trust, VI.B (emphasis added).

the Beneficiary's right to demand same. As to the latter, without the Trustees' correlating power or duty to distribute, this specified right to demand cannot confer upon the Beneficiary an automatic right to receive. As noted by the Court, "because [Hobart] said nothing about a trustee exercising discretion when stating that a beneficiary could demand to receive the accumulated income, we must forego the opportunity to add something that he omitted."[20] But the Court's Memorandum Opinion fails to follow its own edict.

The disputed Trust provision is silent as to a Trustee exercising discretion in distributing demanded accumulated income and a Trustee being bound by a duty to distribute same, but the Trust (as a whole) is not so silent. Article V of the Trust confers upon the Trustees thirty-three distinctly enumerated powers, one being "[t]he power on any partial…distribution of the Trust Estate, to apportion and allocate the assets of the Trust Estate in cash or in kind, or partly in cash and partly in kind, or in undivided interests in the manner deemed advisable at the discretion of the Trustees…." Nowhere does the Trust vest powers solely in a beneficiary. But the Court here stripped the Trustees of the sole authority to manage and administer the Trust and instead vested unfettered rights in Mrs. McMordie, as the sole surviving beneficiary.

The Court disregarded both the express language of the Trust and the absence

---

[20] Appx. A, Memorandum Opinion, pg. 7.

of controlling language in the disputed provision, instead imposing a mandatory distribution standard where no such standard exists. Indeed, the effect of the Court's Opinion is to "add something that [Hobart] omitted"—namely, the duty of the Trustees to distribute accumulated income upon demand—rewriting the subject provision to read (added language in bold and all caps):

> Any undistributed income on hand in the Trust…shall be added to the principal of the Trust for that year and either Beneficiary may make demands anytime thereafter to receive said income, **WHICH THE TRUSTEES MUST DISTRIBUTE**.

By the imposition of an otherwise absent mandatory distribution standard, the Court's Memorandum Opinion has disturbed Hobart's undeniable intent. If the standard determined by the Court applies, Hobart would have been required, during his lifetime, to acquiesce to any demand by Mrs. McMordie for such accumulated but undistributed income, and thus his power as a Trustee would be illusory. Given that Mrs. McMordie lacked the unqualified right to demand (or receive) any Trust income or principal during Hobart's lifetime[21], it is inconceivable that he would have intended to grant her the unlimited right to receive this third category of Trust property, either during his lifetime or after. Hobart's intent is supported by the negative estate and gift tax ramifications implicated by the Court's Opinion. Generally spouses may transfer an unlimited amount of property to each other during

---

[21] Appx. A, Memorandum Opinion, pg. 4.

life or at death. However, if property is transferred in trust from one spouse to another, Internal Revenue Code Section 2056(b)(7) sets forth certain requirements for a transfer in trust to a spouse to qualify for the marital deduction.[22] One such requirement is that the transferee spouse be the only beneficiary.[23] Based on the Court's Opinion, Mrs. McMordie and Hobart would both have had a right to demand undistributed income during Hobart's life. Since Mrs. McMordie was not the sole beneficiary of the Trust during Hobart's life however, the terms of the Trust would necessarily fail Section 2056(b)(7), thereby exposing Hobart (and now the Trust) to potential gift tax liability. It is unquestionable that Hobart intended for Mrs. McMordie's right to receive accumulated but undistributed income to remain subject to a discretionary distribution standard, effectuated only upon the Trustees' exercise of their power to distribute same.[24]

Perhaps more disconcerting is the effect of this Court's Opinion on Mrs. McMordie's ability to drain the Trust of income and accumulated income (turned

---

[22] 26 U.S.C. § 2056(b)(7).

[23] *Id.*

[24] In the event of ambiguity in the settlor's intent, the manner in which the settlor provided for the beneficiary during his lifetime is relevant in determining what the settlor intended to be provided from the trust. *See First National Bank of Beaumont v. Howard*, 229 S.W.2d 781, 783 (Tex. 1950). At no point during Hobart's lifetime was Mrs. McMordie granted an unlimited right to receive Trust property—any receipt of Trust property by Mrs. McMordie was the result of Hobart's demand and his and Mrs. McMordie's joint exercise of their duty to distribute as Trustees. Even the limited right to demand accumulated income did not grant Mrs. McMordie an unlimited right to receive such income. Accordingly, Mrs. McMordie's rights should not be expanded beyond that provided by Hobart during his lifetime.

principal). By giving Mrs. McMordie such unfettered access to this category of Trust property, the Court is thwarting Hobart's express intent that only his family "shall" receive the Trust property at the Trust's termination.[25] Through its ruling, the Court is encouraging the depletion of Trust principal otherwise classified as "undistributed income" to the detriment of Hobart's ultimate intended heirs.

The Court's decision also creates considerable issues not only in the administration of this Trust, but in the administration of all trusts governed by Texas law. The Texas Trust Code incorporates the Uniform Principal and Income Act in Chapter 116.[26] Section 116.002 of the Texas Uniform Principal and Income Act defines both "income" and "principal," but nowhere does it include a definition of "undistributed income." In fact, the only definition of "undistributed income" set forth in the Trust Code is found in Section 116.103(a) which defines such income as follows:

> "Undistributed income" means net income received before the date on which an income interest ends. The term does not include an item of income or expense that is due or accrued or net income that has been added or is required to be added to principal under the terms of the trust.[27]

Section 116.103 makes clear that, under Texas law, trust property is treated as either income or principal, but not both. Accordingly, "net income that has been added or

---

[25] Appx. B, Trust, Article VI.C.
[26] TEX. PROP. CODE § 116.001, *et seq.*
[27] TEX. PROP. CODE § 116.103(a).

is required to be added to the principal under the terms of the trust" is undeniably classified as principal and not income, and should therefore be distributed as such.[28] Therefore, as contemplated by the Trust Code, the "undistributed income" demanded by Mrs. McMordie is principal, subject to a discretionary distribution standard. But this Court disagrees, instead creating a third amorphous category of Trust property—principal that is to be treated like income—that has heretofore never existed under Texas law. How are the Trustees to manage this issue?

By way of example, if the Trust did not distribute $100,000 in income at the end of 2004, that amount of money would have been added to the principal of the Trust ("[a]ny undistributed income on hand in the Trust at the end of each calendar year <u>shall be added</u> to the principal of the Trust for that year…."[29]). The Trustees would be required, by the terms of the Trust and Texas law, to manage the Trust in accordance with their fiduciary obligations, and per their broad powers, could have invested a portion of the principal that included such funds in real property, mineral property, stocks, bonds, or a litany of other options. The Trustees could have borrowed money and encumbered such funds as security for the loan. These are but a few examples, all of which illustrate that Trust property is either income or principal, not both, and it cannot retain an identity as "undistributed income" *ad*

---

[28] *Id.*
[29] Appx. B, Trust, Article VI.B (emphasis added).

*infinitum.* But that is the import of the Court's ruling.

Now, eleven years later, according to the Court's ruling, Mrs. McMordie can demand this same $100,000 and the Trustees *must* distribute it to her. But how can that $100,000 retain the same character? Must the Trustees include interest, and if so, at what rate? Does the statute of limitations limit Mrs. McMordie's demand rights? What if the $100,000 was invested and is now worth five times as much? Is she to receive all fruits of the undistributed income? What if the $100,000 was invested and lost completely? Or what if that $100,000 is a parcel of real property, or mineral interest? What if that $100,000 is not divisible or subject to partition? What if there is inadequate liquidity in the Trust to satisfy the demand? How are the Trustees to determine how and what to liquidate? It defies logic to assume that the choice of six words in the Trust—"either Beneficiary may make demands anytime thereafter"—was intended to supersede the longstanding import of the Texas Trust Code by usurping the powers of the Trustees and creating administrative nightmares that could plague the Trust, and perhaps all Trusts governed by Texas law, for years to come.

B.  The Court's construction of the Trust fails to give effect to all provisions of the Trust, instead rendering several Trust provisions wholly meaningless in disregard for Hobart's express intent.

Moreover, this Court's Memorandum Opinion has the effect of rendering certain of Hobart's deliberate Trust language wholly meaningless. First, by the

Court's logic, a Trustee mandate would (by default) be read into any demand permitted by the Trust that is not expressly subject to the Trustees' discretion—obfuscating the meaning of the word "shall" in nearly every usage. Second, the Court disregards Hobart's distinct temporal construction of the Trust—declining to address the fact that the right to demand accumulated income existed only during Hobart's lifetime (*i.e.*, when "either Beneficiary" was living) and was extinguished upon his death (*i.e.*, when only one Beneficiary remained). If income would never accumulate during Mrs. McMordie's tenure as sole Beneficiary (given her entitlement to a distribution of "all the income at least annually" following Hobart's death), why would she continue to possess a right to demand accumulated income? Third, by applying a mandatory distribution standard to the accumulated income, the discretionary standard deliberately incorporated by Hobart in the distribution of principal is eviscerated. If Mrs. McMordie is unilaterally permitted to access principal in the form of accumulated income on her own volition, the support standard crafted by Hobart himself is rendered meaningless. Fourth, by this same granting of access to principal in the form of accumulated income, the Spendthrift Provision is robbed of effect, leaving this Trust property subject to claims by Mrs. McMordie's creditors and taxable at her death. Such a result could not have been intended by Hobart.

Accordingly, the Court should reconsider its Memorandum Opinion for the

purpose of harmonizing each provision of the Trust and giving effect and purpose to thereto.

## CONCLUSION

As originally pointed out in Appellee/Cross-Appellant's Briefing, through her request for declaratory relief, Mrs. McMordie asked the Court to supplant the unambiguous language of the Trust with an unlimited right to unilaterally receive—solely by demanding—the income that accumulated (but was not distributed) during Hobart's lifetime. This Court agreed to do so, in contravention of Hobart's stated intent and in disregard for the plain language of the Trust. The Court's Memorandum Opinion rewrites the language of the Trust—effectively eviscerating basic principles of trust construction and administration which permit distributions (both mandatory and discretionary) only upon the concurrence of a beneficiary's demand and a trustee's exercise of his corresponding power or duty to distribute that which is demanded.

Accordingly, the Court should reconsider its Memorandum Opinion dated July 24, 2015, and thereafter enter a new opinion affirming the Trial Court's declarations in Charles' favor—which include those requested by Charles and granted, as well as those requested by Mrs. McMordie and denied, and reversing the Trial Court's denial of Charles' requested declarations and its granting of two declarations requested by Mrs. McMordie.

Respectfully submitted,


/s/ David J. Drez III
David J. Drez III
State Bar No. 24007127
*david.drez@wickphillips.com*
Meredith L. Perry
State Bar No. 24075622
*meredith.perry@wickphillips.com*

WICK PHILLIPS GOULD & MARTIN
LLP
100 Throckmorton Street, Suite 550
Fort Worth, Texas 76102
Telephone: 817.332.7788
Telecopier: 817.332.7789

Scott W. Sherwood
State Bar No. 18255250
Sherwood and Sherwood
303 Euclid Street
Panhandle, Texas 79068
Telephone: 806.537.3591
Telecopier: 806.537.3592

**ATTORNEYS FOR APPELLEE/
CROSS-APPELLANT CHARLES
HARRIS MCMORDIE**

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4, I hereby certify that absent the caption, table of contents, index of authorities, signature, proof of service, certificate of compliance and appendices, the computer program used to prepare this document prior to its conversion to a portable document format calculates the number of words in the foregoing motion as 4,439.

/s/ David J. Drez III
David J. Drez III

## <u>CERTIFICATE OF SERVICE</u>

      A true copy of the foregoing document was served on the following counsel of record via electronic filing, on this <u>28</u><sup>th</sup> day of August, 2015:

Slater C. Elza
Jennie C. Knapp
UNDERWOOD LAW FIRM, P.C.
P.O. Box 9158
Amarillo, Texas 79105

                                            */s/ David J. Drez III*
                                            David J. Drez III

# APPENDIX A



# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-14-00393-CV
_____

MAGDALENA SANCHEZ MCMORDIE, IN HER CAPACITY AS BENEFICIARY AND
CO-TRUSTEE OF THE HOBART B. MCMORDIE, II ASSET MANAGEMENT TRUST,
APPELLANT

V.

CHARLES HARRIS MCMORDIE, IN HIS CAPACITY AS CO-TRUSTEE OF THE
HOBART B. MCMORDIE, II ASSET MANAGEMENT TRUST, APPELLEE

_____

On Appeal from the 251st District Court
Randall County, Texas
Trial Court No. 66,482-C, Honorable Ana Estevez, Presiding

_____

July 24, 2015

MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

This appeal involves the interpretation of a trust agreement (that is, the Hobart B.

McMordie, II Asset Management Trust) via an action for declaratory judgment. The

litigants, Magdalena Sanchez McMordie (Magdalena) and Charles Harris McMordie

(Charles), were co-trustees who disagreed about what the provision in question meant.

The final judgment before us arose from cross-motions for summary judgment. Neither

litigant was completely satisfied with the outcome, and both appealed. After reviewing the briefs, record, and authorities, we modify the judgment.

*Background*

Magdalena's husband, Hobart B. McMordie, II, executed the Hobart B. McMordie, II Asset Management Trust on November 1, 2004. The corpus of the trust was comprised of Hobart's property. Additionally, he and his wife Magdalena Sanchez McMordie were designated its beneficiaries and original co-trustees. Alternate trustees were also specified if a trustee failed to serve. Those alternates consisted of Marie McCormick and Charles.

Hobart died in 2010. At that point, the trust became irrevocable by its own terms. His death also caused Marie McCormick to become a co-trustee with Magdalena. Charles succeeded Marie in 2013. Thereafter, the dispute at bar arose. The portion of the trust document underlying the dispute appears at Article VI, paragraph B. It provides that:

> The Trustees shall distribute income and principal of the Trust at such times and in such amounts as demanded by HOBART B. McMORDIE during the term of the Trust. Any undistributed income on hand in the Trust at the end of each calendar year shall be added to the principal of the Trust for that year and either Beneficiary may make demands anytime thereafter to receive said income. If MAGDALENA SANCHEZ survives HOBART B. McMORDIE, the Trustees shall distribute all the income at least annually to her and shall, at Trustees' sole discretion, distribute principal to her to provide for her health, support and maintenance in the standard of living to which she is accustomed at the death of HOBART B. McMORDIE . . . . Any distribution to a Beneficiary . . . whether income or principal, shall be the separate property of such Beneficiary. The Trustees, at the request of either Beneficiary, shall sell or convert any unproductive property in the Trust and make such property productive of income within a reasonable time after such request.

2

The trust terms further specified that it was to terminate upon the "death of the last surviving Beneficiary." When that occurred, Hobart's nephews (or their descendants should they predecease the last beneficiary) were to receive the trust corpus. Charles happened to be one of the nephews.

The controversy before us involves a twofold issue. The first question concerned whether Magdalena was entitled to any income accumulated by the trust but undistributed during the life of Hobart. The second query pertained to whether that accumulated income was payable to Magdalena upon her "demand." Charles's reading of the trust document purportedly led him to believe that "no" was the appropriate answer to both issues. Magdalena disagreed.

Upon entertaining cross-motions for summary judgment, the trial court effectively declared that the accumulated income did not become principal of the trust and that Magdalena had a right to demand the previously accumulated income. Yet, her right to demand the accumulated income did not come with the right to receive that income upon demand, according to the trial court. Apparently, it could be paid only if both she and Charles, as co-trustees, agreed to its distribution.

*Authority*

Needless to say, we review summary judgments *de novo*. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). And, given that the controversy encompasses little more than the interpretation of a writing (that is, a trust agreement), we need not defer to the trial court's construction of the instrument. Indeed, interpreting a document constitutes a question of law that we resolve *de novo.*

3

*Mathis v. Carter*, No. 07-07-0390-CV, 2009 Tex. App. LEXIS 283, at *2-3 (Tex. App.—Amarillo January 15, 2009, no pet.) (mem. op.).

Next, and as done when construing all written instruments, we interpret the trust document by attempting to garner the intent of the person who created it, as that intent is expressed within the four corners of the document. *Id.* That process obligates us to harmonize the terms of the instrument, give effect to all of its parts, and avoid rendering any provision meaningless. *Id.*; *accord Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (stating the same). The rules of construction also mandate that we accord to the words used in the instrument their ordinary and generally accepted meaning, unless the writing evinces a contrary intent. *JAW The Point L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597 (Tex. 2015). With that said, we turn to the trust instrument and dispute before us.

Reading Article VI, paragraph B we make several initial observations. First, Hobart, himself, had the authority to demand and receive payment of either or both the trust income and principal at his discretion. The directive that the "Trustees shall distribute income and principal of the Trust at such times and in such amounts *as demanded by Hobart B. McMordie* during the term of the Trust" evinces no other reasonable interpretation. (Emphasis added). Magdalena had no power to demand distribution of both the income and principal.

Second, not all the income earned by the trust in any particular year had to be distributed. This is illustrated by the phrase stating that "[a]ny undistributed income on hand in the Trust at the end of each calendar year shall be added to the principal of the

4

Trust for that year . . . ."  If all the income had to be distributed, then there would be no undistributed income as contemplated by the passage.

Third, Magdalena had the right to demand that she receive undistributed income; Hobart did not have the sole power to do that.  We garner as much from the phrase that "*either Beneficiary* may make demands anytime thereafter to receive said income." (Emphasis added).  Because Magdalena was one of the two beneficiaries named in the instrument, she fell within the category of "either Beneficiary."

Fourth, that a demand for undistributed or accumulated income could be made even though the income had been added to the principal evinces that Hobart intended for the undistributed income to maintain its character as income, at least for purposes of "either" beneficiary making a demand to receive it.  In other words, its inclusion in the principal did not somehow strip a beneficiary's ability to demand receipt of it.

Fifth, we further note an absence of any deadline in the verbiage describing either beneficiary's right to demand receipt of undistributed income.  Indeed, Hobart used the phrase "anytime thereafter" when specifying the period in which such a demand for its receipt could be made.  Again, we must afford words their ordinary meaning, and "anytime" means "anytime" or "whenever."  *Anytime Definition,* DICTIONARY.COM, http://www.dictionary.reference.com/browse/anytime (last visited July 15, 2015).  In turn, "thereafter" means "afterward" and refers to the point in time when undistributed income for the year is added to the trust principal.  *Thereafter Definition,* DICTIONARY.COM, http://www.dictionary.reference.com/browse/thereafter (last visited July 15, 2015).  Combining these definitions leads us to reasonably infer that Hobart intended not only that the right to demand receipt of the accumulated income had no

5

end but also that the right could be exercised once the income had been undistributed and added to the principal.

With those observations in mind, we next turn to Charles's argument that despite a beneficiary's demand for payment of the accumulated income, it could not be distributed unless both trustees acquiesced. Obviously the trial court agreed with Charles when it held that "[n]o beneficiary can unilaterally compel the distribution of undistributed income <u>solely by making demand</u>." (Emphasis in original). Yet, in drafting the trust instrument, Hobart did not simply say that the beneficiaries could demand the income. He wrote that once the income was accumulated, a beneficiary "may make demands anytime thereafter *to receive* said income. (Emphasis added). The ordinary or generally accepted definition of "to receive" encompasses such concepts as "to come into possession," *Receive Definition,* MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/receive (last visited July 15, 2015), and to "be given, presented with, or paid." *To Receive Definition,* OXFORD DICTIONARIES, http://www.oxforddictionaries.com/us/definition/american_english/receive?q=to+receive (last visited July 15, 2015). If one trustee could ignore the demand and block distribution, as suggested by Charles, then the beneficiary would lack the ability to "come into possession of" or "be given, presented with, or paid" the income demanded.

To the foregoing, we add another observation. It pertains to the absence of any reference to the trustees having discretion in responding to the demand. Such a limitation appeared elsewhere in Article VI, paragraph B. For example, Hobart specified that the distribution of principal once he died was to lie within the "Trustees' sole discretion," This circumstance suggests that had Hobart wanted to condition the

delivery of the accumulated income upon the exercise of the trustees' discretion, he knew how to do that. And, because he said nothing about a trustee exercising discretion when stating that a beneficiary could demand to receive the accumulated income, we must forego the opportunity to add something that he omitted.[1] *See Weaver v. Jamar*, 383 S.W.3d 805, 811 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (stating that a court cannot rewrite a document under the guise of interpreting it).

Hobart's directive connotes much more than simply demanding; it includes receiving once the demand was made. And, the entitlement to receive that income necessarily implies an obligation on the trustees to deliver it once demanded. Adopting Charles's interpretation of the passage would effectively strip the phrase "to receive" of meaning, and we cannot approve of that outcome if the rules of construction are to be followed. Consequently, Hobart's directive saying that "either Beneficiary may make demands anytime thereafter to receive said income" means 1) the undistributed income remains subject to those demands despite being added to the principal, 2) the beneficiary has the right to demand payment of undistributed income whenever he or she cares to, and 3) the trustees must distribute accumulated income upon a beneficiary's demand. To the extent the trial court held otherwise, it erred. To the extent that the error permits a trustee to thwart Hobart's intent, it is harmful.

Via his last issue, Charles contends the trial court erred in sustaining objections to portions of his affidavit tendered in support of his motion for summary judgment. The

---

[1] We also reject the argument that once added to the principal, the income became principal subject to distribution at the trustees' discretion. As previously discussed, while accumulated income was added to the trust principal, it nonetheless remained identifiable as income for purposes of distribution upon the demand of a beneficiary. If this was not so and if it simply became principal, then there would be no "undistributed income" to fulfill the demand by a beneficiary. In other words, undistributed income maintained a separate identity from principal in general with regard to a beneficiary's demand to receive that income.

7

trial court apparently excluded the affidavits, or portions thereof, because they consisted of legal conclusions.[2] To show that it erred, though, Charles merely posited before us that:

> The portions of the affidavit that Mrs. McMordie objected to constituted competent summary judgment evidence such that they should not have been excluded from the summary judgment record. It is inconceivable how affidavit testimony concerning the parties' competing requests for declaratory relief and the bases on which same are requested is an irrelevant legal conclusion . . . . Additionally, the factual statement contained in Paragraph 10 of the affidavit concerning the amount of Trust income received by Mrs. McMordie is relevant to establish that all income has been distributed to her . . . . Accordingly, the Trial Court's Final Judgment sustaining Mrs. McMordie's objections to the affidavit should be reversed.

Missing from this argument is discussion about why "testimony concerning the parties' competing requests for declaratory relief and the bases for same" and "the factual statement . . . concerning the amount of Trust income received by" Magdalena are relevant to the meaning of Article VI, paragraph B. No one contended that, nor did we find, the provision was ambiguous. Thus, its interpretation had to be conducted by us through viewing only the words contained within four corners of the trust instrument. What others may have thought it meant or what income Magdalena received from the trust mattered not given that they fell outside the words contained within the four corners of Hobart's trust.

In sum, we overrule Charles's issues. We sustain Magdalena's issue attacking the trial court's interpretation of Article VI, paragraph B so as to prevent Magdalena from receiving the undistributed income upon her demand for it. We also reverse the trial

---

[2] We do not see in the record where Charles objected to the court's ruling on the objections to his summary judgment evidence. The failure to do so generally waives any complaint. *Beinar v. Deegan*, 432 S.W.3d 398, 403 (Tex. App.—Dallas 2014, no pet.); *Southwestern Bell Tel. Co. v. Combs*, 270 S.W.3d 249, 273 (Tex. App.—Amarillo 2008, pet. denied).

court's judgment to the extent it held that a beneficiary's demand for receipt of undistributed income under Article VI, paragraph B of Hobart B. McMordie, II Asset Management Trust did not obligate its trustees to comply with and satisfy that demand. We modify the judgment to read that the language within paragraph B, Article VI stating that "either Beneficiary may make demands anytime thereafter to receive said income" means 1) the undistributed income remains subject to the demand of a beneficiary even though previously added to the trust principal, 2) the beneficiary has the right to demand payment of undistributed income whenever he or she cares to, and 3) the trustees must distribute that income upon a beneficiary's demand. So modified, the judgment is affirmed.

Brian Quinn
Chief Justice

9

# APPENDIX B

# DECLARATION OF TRUST

STATE OF TEXAS   §
                 §    KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF ROBERTS  §

THAT I, HOBART B. McMORDIE, II, a resident of Roberts County, Texas, and a citizen of the United States, hereby create this Trust as more fully set out hereunder: .

## ARTICLE I - NAME

The Trust shall be called the HOBART B. McMORDIE, II ASSET MANAGEMENT TRUST, ("the Trust") and I revoke all previous trust signed by me whether or not recorded in the official public records of Roberts County, Texas.

## ARTICLE II - TRUST PROPERTIES

I, HOBART B. McMORDIE, II, individually, and as Trustee of the HOBART BRUCE McMORDIE 2 ASSET MANAGEMENT TRUST as amended, the original of which is dated the 6th day of April, 1998, herein referred to as "Trustor," hereby GRANT, CONVEY, ASSIGN, TRANSFER and DELIVER to the Trustees named hereunder, as original Trustees, TO HAVE AND TO HOLD all of my interest in all of my estate and property owned by me individually or held as trust property in the HOBART BRUCE McMORDIE 2 ASSET MANAGEMENT TRUST dated the 6th day of April, 1998, as amended; including, but is not limited to, the property described on Schedule "A" (whether held by me individually or in the HOBART BRUCE McMORDIE 2 ASSET MANAGEMENT TRUST dated the 6th day of April, 1998, as amended), attached hereto and made a part hereof, the receipt of which is hereby acknowledged by the Trustees all of which is located in the United States. Such property and any property subsequently contributed to the Trust by HOBART B. McMORDIE or by anyone else shall constitute the trust estate, and shall be held, managed, administered and distributed by the Trustees as provided herein.

## ARTICLE III - PURPOSE

The purpose for the Trust during its term is to provide for the orderly distribution of the trust estate and property upon my death.

## ARTICLE IV - TRUSTEES

I appoint HOBART B. McMORDIE, II and MAGDALENA SANCHEZ McMORDIE of Amarillo, Texas, as original Co-Trustees ("Trustees"). If either original Co-Trustee fails or ceases to serve, for any reason, I appoint MARIE McCORMICK as successor Co-Trustee in his or her stead. If thereafter, any Co-Trustee fails or ceases to serve, for any reason, I appoint, my nephew, CHARLES HARRIS McMORDIE, as a successor Co-Trustee.

## ARTICLE V - POWERS OF TRUSTEE

A. In the administration of the Trust, the Trustees shall have the following powers, exercisable without court approval and in the absolute discretion of the Trustees, upon such terms and conditions as the Trustees shall deem advisable, in addition to, and without limitation upon any other powers granted by the Texas Trust Code or amendments thereto. The Trustees

VOL 124 PAGE 69

COPY

shall not be subject to the restrictions imposed against Trustees as provided for in Section 113.052, 113.053 and 113.054 of the Texas Trust Code, or amendments thereto, provided said Trustees deal with my estate prudently and for adequate consideration.

1. The power to continue to hold any and all property received by the Trustees or subsequently added to the Trust Estate or acquired pursuant, to proper authority, including shares of Trustees' own stock and stock in any corporation controlling, controlled by, or under common control with the Trustees, if and as long as the Trustees, in exercising reasonable prudence, discretion, and intelligence, consider that the retention is in the best interests of the Trust.

2. The power to make, execute and deliver oil, gas and other mineral leases, division orders, ratification of leases and pooled units, and to accept bonus, rentals and royalties (including shut-in royalties), and treat all of the same as income as provided for herein.

3. The power to make, execute and deliver rights of way grants and easements for pipelines and roads, and other surface uses.

4. The power to make demand for, claim and bring suit to recover damages of every kind and character to the surface estate or the mineral estate of lands subject to or affected in any way by the Trust.

5. The power to develop any oil, gas or other mineral fee simple estate by exploring, drilling, testing, completing, equipping or producing a well or wells for oil, gas or other minerals.

6. The power to buy and sell stocks, bonds and other securities, on account, including option puts and calls, futures options, commodities, and gold, silver and precious metals.

7. The power to acquire or invest in an undivided interest in any property, real or personal, and to invest funds belonging in any other Trust or estate, whether administered by the same or different Trustees or fiduciaries, and whether created by Trustors or any other person, inter vivos or by Will, receiving for the invested funds an undivided interest and right of participation in the investment item.

8. The power to exercise, respecting securities held in the Trust Estate, all the rights, powers, and privileges of an owner, including, but not limited to, the power to vote, give proxies, and to pay assessments and other sums deemed by the Trustees necessary for the protection of the Trust Estate; to participate in voting trusts, pooling agreements, foreclosures, reorganizations, consolidations, mergers, and liquidations and in connection therewith to deposit securities with and transfer title to any protective or other committee under such terms as the Trustees may deem advisable; to exercise or sell stock subscription or conversion rights; to accept and retain as an investment any securities or other property received through the exercise of any of the foregoing powers, regardless of any limitations elsewhere in the Trust relative to investments by the Trustees.

9. The power to hold securities or other Trust property in the name of the Trustees as Trustees under this Trust Agreement or in the Trustees' own name or in the name of a nominee or in such conditions where ownership will pass by delivery.

10. The power to continue and operate, to sell or to liquidate, as the Trustees deems advisable, at the risk of the Trust Estate, any business or partnership interests received by the Trust Estate.

11. The power to sell for cash or on deferred payments and on such terms and conditions as are deemed appropriate by the Trustees, whether at public or private sale, to exchange, and to convey any property of the Trust Estate.

12. The power on any division of the Trust Estate into separate shares or Trusts, to apportion and allocate the assets of the Trust Estate, in cash or in kind, or partly in cash and partly in kind, or in undivided interests in the manner deemed advisable in the discretion of the Trustees; after any division of the Trust Estate, the Trustees may make joint investments with funds from some or all of the several shares or Trusts, but the Trustees shall keep separate accounts for each share or Trust.

13. The power to abandon any Trust asset or interest therein in the discretion of the Trustees.

14. The power to grant an option involving disposition of a Trust asset and to take an option for the acquisition of any asset by the Trust Estate.

15. The power to lease any real or personal property of the Trust Estate for any purpose for terms within or extending beyond the duration of the Trust.

16. The power to manage, control, improve, and repair real and personal property belonging to the Trust Estate.

17. The power to partition, divide, subdivide, assign, develop, and improve any Trust property; to make or obtain the vacation of plats and adjust boundaries or to adjust differences in valuation on exchange or partition by giving or receiving consideration; and to dedicate land or easements to public use with or without consideration.

18. The power to make ordinary and extraordinary repairs and alterations in buildings or other Trust property, to demolish any improvements, to raze party walls or building, and to erect new party walls or buildings as the Trustees deems advisable.

19. The power to borrow money for any Trust purpose from any person, firm or corporation, including one acting as Trustees hereunder, on the terms and conditions deemed appropriate by the Trustees and to obligate the Trust Estate for repayment; to encumber the Trust Estate or any of its property by mortgage, deed of trust, pledge, or otherwise, using whatever procedures to consummate the transaction deemed advisable by the Trustees; to replace, renew and extend any encumbrance and to pay loans or other obligations of the Trust Estate deemed advisable by the Trustees.

20. The power to make loans, adequately secured and at a reasonable rate of interest, to the executor of the estate of the Trustor. The Trustees shall be without liability for any loss resulting therefrom.

21. The power to enter into oil, gas, liquid or gaseous hydrocarbon, sulfur, metal and any and all other natural resource leases on terms deemed advisable by the Trustees, and to enter into any pooling, unitization, repressurization, community and other types of agreements relating to the exploration, development, operation, and conservation of properties containing minerals or other natural resources; to drill, mine, and otherwise operate for the development of oil, gas, and other minerals; to contract for the installation and operation of absorption and repressuring plants; and to install and maintain pipelines.

22. The power to procure and carry at the expense of the Trust Estate insurance of the kinds, forms, and amounts deemed advisable by the Trustees to protect the Trust Estate and the Trustees against any hazard.

23. The power to enforce any deed of trust, mortgage, or pledge held by the Trust Estate and to purchase at any sale thereunder any property subject to any such hypothecation.

24. The power to extend the time of payment of any note or other obligation held in the Trust Estate, including accrued or future interests, in the discretion of the Trustees.

25. The power to compromise, submit to arbitration, release with or without consideration, or otherwise adjust claims in favor of or against the Trust Estate.

26. The power to commence or defend at the expense of the Trust Estate any litigation affecting the Trust or any property of the Trust Estate deemed advisable by the Trustees.

27. The power to pay all taxes, assessments, compensation of the Trustees, and all other expenses incurred in the collection, care, administration and protection of the Trust Estate.

28. The power to employ an attorney, investment advisor, accountant, broker, tax specialist or any other agent deemed necessary in the discretion of the Trustees; and to pay them from the Trust Estate a reasonable compensation for all services performed by any of them.

29. The power to terminate, in the discretion of the Trustees, any separate Trust held for a Beneficiary, if the fair market value of the separate Trust, at any time, becomes less than One Thousand Dollars ($1,000) and, regardless of the age of the Beneficiary, to distribute the principal and any accrued or undistributed net income to the Beneficiary, or to his guardian, conservator, or other fiduciary.

30. The power on any partial or final distribution of the Trust Estate, to apportion and allocate the assets of the Trust Estate in cash or in kind, or partly in cash and partly in kind, or in undivided interests in the manner deemed advisable at the discretion of the Trustees and to sell any property deemed necessary by the Trustees to make the distribution.

31. The power to do all the acts, to take all the proceedings, and to exercise all the rights, powers, and privileges which an absolute owner of the property would have, subject always to the discharge of Trustees' fiduciary obligations; the enumeration of certain powers in the Trust Agreement shall not limit the general or implied powers of the Trustees; The Trustees shall have all additional powers that may now or hereafter be conferred on the Trustees by law or that may be necessary to enable the Trustees to administer the Trustees in accordance with the provisions of the Trust Agreement, subject to limitations specified in the Trust Agreement.

32. The power to make application for, acquire and pay premiums for life, health, accident or medical and hospitalization insurance covering any Beneficiary or any third party in whom

the Trust would have an insurable interest. The Trustees shall also have the power to make demand for, claim and bring suit for recovery of expenses owed to health care providers, and the power to make demand for, claim and bring suit to recover life insurance benefits of every kind and character and to allocate such benefits as principal or income, and distribute them in accordance with all the powers of the Trustees generally set out herein.

33. The power to sell, exchange, assign, transfer, and convey any real property, or any interest in real property, or any interest in personal and real property which is considered a mixed interest, held in Trustor's probate or nonprobate estate, at public or private sale, with or without notice, at such time and price and under such terms and conditions as the Trustees may deem reasonable and prudent.

B. Any Trustee may resign without the necessity of any court accounting. Any successor Trustee must accept the trusteeship and shall be responsible only for those assets which are actually delivered to such Trustee. The successor Trustee, on executing an acknowledged acceptance of the trusteeship and upon receipt of those assets which are actually delivered to such successor Trustee by the prior Trustee, shall be vested without further act on the part of anyone with all of the estates, titles, rights, powers, duties, immunities and discretions granted to the prior Trustee.

C. The Trustees may rely upon the written opinion of a competent attorney, any facts stated in any instrument in writing and believed true, or any other evidence deemed sufficient. The Trustees shall be saved harmless from any liability for any action the Trustees may take, or for the failure of the Trustees to take any action, if done in good faith and without gross negligence.

D. To make it a matter of record of who and where the qualified and acting trustees of the trust created hereby are from time to time as trustees change, each change of trusteeship shall be evidenced by a sworn statement of the acting trustees and their addresses filed in the Deed Records of each county and state where real property of the Trust is situated and in Roberts, County, Texas.

## ARTICLE VI - BENEFICIARIES AND DISTRIBUTION

A. The Beneficiaries of the Trust are HOBART B. McMORDIE, II and MAGDALENA SANCHEZ McMORDIE, each referred to herein as "Beneficiary".

B. The Trustees shall distribute the income and principal of the Trust at such times and in such amounts as demanded by HOBART B. McMORDIE during the term of the Trust. Any undistributed income on hand in the Trust at the end of each calendar year shall be added to the principal of the Trust for that year and either Beneficiary may make demands anytime thereafter to receive said income. If MAGDALENA SANCHEZ survives HOBART B. McMORDIE, the Trustees shall distribute all the income at least annually to her and shall, at Trustees' sole discretion, distribute principal to her to provide for her health, support and maintenance in the standard of living to which she is accustomed at the death of HOBART B. McMORDIE taking into consideration her other sources of income and principal. Income is defined herein to include all royalties, bonus payments, IRA distributions or Retirement Plan distributions and any other distribution of funds of similar characteristics. Any distribution to a Beneficiary of the Trust, whether income or principal, shall be the separate property of such

Beneficiary. The Trustees, at the request of either Beneficiary, shall sell or convert any unproductive property in the Trust and make such property productive of income within a reasonable time after such request.

C.     Upon the termination of the Trust as set out below, the accumulated and undistributed income and principal shall be distributed. discharge of the Trust, to the nephews of HOBART B. McMORDIE, II, whose names are CHARLES HARRIS McMORDIE, FRANK F. McMORDIE, III and JOHN HOBART McMORDIE, share and share alike, per capita and not per stirpes. However, should either CHARLES HARRIS McMORDIE, FRANK F. McMORDIE or JOHN HOBART McMORDIE die before the Trust terminates with descendants, then their share shall, upon termination of the Trust, be distributed to the descendants, per stirpes and not per capita of the named decedent and shall not be distributed to the family of MAGDALENA SANCHEZ McMORDIE, allowing a reasonable period of time for the Trustees to wind up the affairs of the Trust before making the aforesaid distribution.

## ARTICLE VII - TERMINATION

The Trust shall terminate upon the death of the last surviving Beneficiary.

## ARTICLE VIII - CONTINGENT TRUST

If any share of Trust property is otherwise provided to be distributed to a person who has not attained the age of twenty-five (25) years or to a person who has been adjudicated incompetent by a court of proper jurisdiction (such persons are referred to under this Article as the "Beneficiary"), Trustor direct the Trustees to hold such share in a separate Trust (the "Contingent Trust") for the benefit of such Beneficiary. When such Beneficiary under the age of twenty-five (25) years attains the age of twenty-five (25) years or when an adjudged incompetent Beneficiary is adjudicated mentally competent to receive his or her share, whichever shall last occur, all remaining accumulated and undistributed income and principal of such Trust shall be distributed to such Beneficiary and such Trust shall terminate. Prior to the termination of such Trust, the Trustees shall utilize such amounts of Trust income and principal as the Trustees, in the Trustees' absolute and uncontrolled discretion, deems desirable from time to time to provide for the health, support, maintenance or education of such Beneficiary, directly and without the interposition of any guardian. Any distribution to a Beneficiary of the Trust, whether income or principal, shall be the separate property of such Beneficiary. If such Beneficiary dies before the termination of the Trust, his or her Trust shall terminate and the principal and all accumulated and undistributed income held for such Beneficiary in Trust shall be distributed to his or her then living descendants, per stirpes and not per capita; and if none, to the then living brothers and sisters of such Beneficiary, share and share alike; and if none, to the then living descendants of my brother, FRANK F. McMORDIE, per stirpes and not per capita.

## ARTICLE IX - TEXAS TRUST

This is a Texas Trust, made and executed in this state, and is to be governed and construed according to its laws and shall continue to be so, though conducted and administered elsewhere.

## ARTICLE X - COMPENSATION OF TRUSTEES

All reasonable necessary expenses incurred by the Trustees in the performance of the duties of a Trustees in administering the Trust shall be paid by the Trust and the Trustees shall receive the statutory compensation for services performed payable from either income or principal or both.

## ARTICLE XI - REVOCATION

The Trust shall be revocable and may be revoked, altered, modified or amended by both Primary Beneficiaries during their lifetime. Upon the death of the first Primary Beneficiary who dies, the Trust shall become irrevocable.

## ARTICLE XII - DESCENDANTS DEFINED

Reference in this Trust to "descendant" or "descendants" shall mean our lawful lineal blood descendants of the first, second or any other degree of ancestor designated; provided, however, that such references shall include, with respect to any provision of this Trust, descendants who have been conceived at any specific point in time relevant to such provision and who thereafter survive birth; and provided further that an adopted child and such adopted child's lawful lineal descendants by blood or adoption shall be considered under the Trust as lawful lineal descendants of the adopting parent or parents. Notwithstanding the foregoing, a descendant who is over the age of eighteen (18) years when legally adopted is not the child of his or her adoptive parent for all purposes herein.

## ARTICLE XIII - PER STIRPES DISTRIBUTION

If a distribution in the Trust is directed to be made to any person's descendants "per stirpes," the division into stirpes shall begin at the generation nearest to such person that has a living member.

## ARTICLE XIV - PERPETUITIES CLAUSE

Notwithstanding the directions heretofore given the Trustees as to the distribution of income and principal under the terms of the Trust, any trust established by this Trust Agreement shall terminate, if it has not previously terminated, twenty-one (21) years after the death of the last surviving descendant of my parents, NELLIE JONES McMORDIE and FRANK F. McMORDIE, SR., living at the date this Trust is executed.

## ARTICLE XV - NUMBER AND GENDER

While the Trust may sometimes use the singular term "Trustee" or a singular pronoun, such is done for drafting convenience, and it is Trustor's intent to include the plural. It is also Trustor's intent that where the masculine gender may have been used, it shall include the feminine and neuter gender.

## ARTICLE XVI - SPENDTHRIFT TRUST ·

The Trust shall be a Spendthrift Trust, as contemplated by Section 112.035 of the Texas Trust Code. to the extent necessary to protect the principal of the Trust Estate, the Trustees or Beneficiary may apply to a court of competent jurisdiction, if necessary, for appointment of a Trustee or Co-Trustee pursuant to Section 112.034(c) and Section 112.054 of the Texas Trust Code. Should any provision of the Trust be judicially construed and declared to invalidate the spendthrift provisions of the Trust, the provision subjecting the remaining provisions of the Trust, as supplemented by any and all necessary provisions of the Texas Trust Code, shall continue to remain in force and effect and operate as a Trust subject to the full enforceability of this Spendthrift Provision. In order to fully effectuate this Spendthrift clause, I direct that any beneficiary of distributions of income or principal may waive or disclaim such distributions or may elect to take such distributions in cash at any time or from time to time or in any other manner so that they shall not be subject to attachment, sequestration, garnishment or other legal process. Notwithstanding any other provisions of the Trust pertaining to distributions of income or principal, if any beneficiary becomes subject to any order of a court of competent jurisdiction for the freezing, attachment, or turnover of distributions, the Trustees shall become vested with discretion whether to make or not to make any further distributions of income or principal but may instead retain such distributions until the beneficiary is no longer subject to such orders or until such time as the Trustees, in the Trustees' sole discretion, determines that such distributions should be made.

## ARTICLE XVII - HEADINGS

The headings above the various provisions of the Trust have been included only in order to make it easier to locate the subject matter covered by each provision and are not to be used in construing the Trust or in ascertaining our intention with regard to our property held in trust.

## ARTICLE XVIII - ACCEPTANCE OF TRUST

The Trustees, by joining in the execution of the Trust Agreement, hereby accepts the Trust upon the terms and conditions herein.

EXECUTED in this 1st day of November, 2004.

_____
HOBART B. McMORDIE, II, Trustor

STATE OF TEXAS      §
                    §
COUNTY OF POTTER    §

The foregoing instrument was acknowledged before me on the 1st day of November, by HOBART B. McMORDIE, II.

PATRICIA M. SMITH
NOTARY PUBLIC,
STATE OF TEXAS
My Commission Expires 01-31-2005

_____
Notary Public

_Hobart B. McMordie, II Asset Management Trust_

ACCEPTED by HOBART B. McMORDIE, II and MAGDALENA SANCHEZ McMORDIE of Amarillo, Texas, as original Co-Trustees, this 1st day of November, 2004.

_____
HOBART B. McMORDIE, II
Co-Trustee

_____
MAGDALENA SANCHEZ McMORDIE
Co-Trustee

## SCHEDULE "A"

1.  My interest individually or held in any trust previously created by me (being 1/3rd of a 922/1000 interest) in all the minerals under the "McMordie North and South Ranch" situated in Roberts County, Texas as described in the attachment #1 hereto;

2.  My interest individually or held in any trust previously created by me (being a 1/2 interest) in 11,975 acres in the surface of the real estate situated in Roberts County, Texas as described in the attachment #2 hereto (referred to as the ("McMordie North Ranch");

3.  My interest individually or held in any trust previously created by me (being a 1/2 interest in the Water Rights as described in the attachment #3 hereto (also referred to as the ("McMordie North Ranch");

4.  The residence located at 3200 Hawthorne, Amarillo, Texas;

5.  Securities;

6.  Bank Accounts;

7.  Life Insurance Policies;

8.  Furniture & Furnishings;

9.  Personal Effects;

10. Beechcraft Airplane;

11. Automobiles; and

12. All my interest in any other properties; real, personal, tangible and intangible, located in the United States.

estplan\memordie.h\trust.hls

After Recording Return to:
Donald R. Ham, Attorney
500 S. Taylor, L.B. 221
Amarillo, Texas 79101

*Hobart B. McMordie, II Asset Management Trust*

| Section | Block | Survey | Acres |
|---|---|---|---|
| 84 | C | G&M | 640 acres |
| 85 | C | G&M | 640 acres |
| 86 | C | G&M | 640 acres |
| 87 | C | G&M | 602 acres |
| 88 | C | G&M | 640 acres |
| 89 | C | G&M | 640 acres |
| 90 | C | G&M | 640 acres |
| 91 | C | G&M | 640 acres |
| *118 (N/W pt.) | C | G&M | 214 acres |
| 123 | C | G&M | 495 acres |
| 124 | C | G&M | 625 acres |
| 125 | C | G&M | 590 acres |
| 126 | C | G&M | 577 acres |
| 127 | C | G&M | 640 acres |
| 128 | C | G&M | 640 acres |
| 129 | C | G&M | 367 acres |
| 130 | C | G&M | 365 acres |
| 131 | C | G&M | 324 acres |
| 132 | C | G&M | 223 acres |
| 6 | A-1 | EL&RR Ry Co. | 320 acres |
| 7 | A-1 | EL&RR Ry Co. | 320 acres |
| 8 | A-1 | EL&RR Ry Co. | 320 acres** |
| 9 (W/pt.) | A-1 | EL&RR Ry Co. | West 122 acres |
| 11 (W/pt.) | A-1 | EL&RR Ry Co. | West 67 acres |
| 12 | A-1 | EL&RR Ry Co. | 320 acres |
| 13 (W/pt.) | A-1 | EL&RR Ry Co. | West 220 acres |
| 14 (W/pt.) | A-1 | EL&RR Ry Co. | West 153 acres |
| 15 | A-1 | EL&RR Ry Co. | 320 acres |
| 16 (W/pt.) | A-1 | EL&RR Ry Co. | 245 acres |
| 17 | A-1 | EL&RR Ry Co. | 320 acres |
| 18 | A-1 | EL&RR Ry Co. | 320 acres |
| 19 | A-1 | EL&RR Ry Co. | 320 acres |
| 20 | A-1 | EL&RR Ry Co. | 320 acres |
| 21 | A-1 | CFCO | 102.3 acres |
| 22 | A-1 | CFCO | 102.3 acres |
| 23 | A-1 | D&SE Ry. Co. | 320 acres |
| 24 | A-1 | D&SE Ry. Co. | 320 acres |
| 25 | A-1 | D&SE Ry. Co. | 640 acres |
| 26 | A-1 | D&SE Ry. Co. | 640 acres |
| 1 | A-2 | EL&RR Ry. Co. | 320 acres |
| 3 | A-2 | EL&RR Ry. Co. | 320 acres |
| 4 | A-2 | EL&RR Ry. Co. | 320 acres |
| 5 | A-2 | EL&RR Ry. Co. | 320 acres |
| 6 | A-2 | EL&RR Ry. Co. | 320 acres |
| 7 | A-2 | EL&RR Ry. Co. | 320 acres |
| 8 | A-2 | EL&RR Ry. Co. | 320 acres |
| 9 | A-2 | EL&RR Ry. Co. | 320 acres |
| 10 | A-2 | EL&RR Ry. Co. | 320 acres |
| 11 | A-2 | EL&RR Ry. Co. | 320 acres |
| 12 | A-2 | EL&RR Ry. Co. | 320 acres |
| 13 | A-2 | EL&RR Ry. Co. | 320 acres |
| 14 | A-2 | EL&RR Ry. Co. | 320 acres |
| 162 (NW/4) | 42 | H&TC Ry. Co. | 160 acres |
| 187 | 42 | H&TC Ry. Co. | 561 acres |

*Metes and bounds description: Beginning at the Northwest Corner of said Survey, Thence East 1288 varas; thence South 1535 varas; Thence East North 85 Degrees 20 Minutes West 640 Varas to a point on the East line of Survey 20, Block A-1; Thence North 1070 Varas to the Northeast Corner of said Survey 20; Thence West 651 varas to the Southwest corner of Section 118; Thence North 392 varas to the place of beginning.
(As described in the Deed of Distribution and Recorded in the Deed Records of Roberts County, Texas in Volume 112, Page 95, subject to all reservations stated in said Deed of Distribution)

| Section | Block | Survey | Acres |
|---------|-------|--------|-------|
| 8 | A-1 | EL&RR Ry Co. | 320 |
| 9 (W/pt.) | A-1 | EL&RR Ry Co. | 122 |
| 11 (W/pt.) | A-1 | EL&RR Ry Co. | 67 |
| 12 | A-1 | EL&RR Ry Co. | 320 |
| 13 (W/pt.) | A-1 | EL&RR Ry Co. | 220 |
| 14 (W/pt.) | A-1 | EL&RR Ry Co. | 153 |
| 15 | A-1 | EL&RR Ry Co. | 320 |
| 16 (W/pt.) | A-1 | EL&RR Ry Co. | 245 |
| 17 | A-1 | EL&RR Ry Co. | 320 |
| 18 | A-1 | EL&RR Ry Co. | 320 |
| 19 | A-1 | EL&RR Ry Co. | 320 |
| 20 | A-1 | EL&RR Ry Co. | 320 |
| 21 | A-1 | CFCO | 102.3 |
| 22 | A-1 | CFCO | 102.3 |
| 23 | A-1 | D&SE Ry. Co. | 320 |
| 24 | A-1 | D&SE Ry. Co. | 320 |
| 1 | A-2 | EL&RR Ry. Co. | 320 |
| 3 | A-2 | EL&RR Ry. Co. | 320 |
| 4 | A-2 | EL&RR Ry. Co. | 320 |
| 5 | A-2 | EL&RR Ry. Co. | 320 |
| 6 | A-2 | EL&RR Ry. Co. | 320 |
| 7 | A-2 | EL&RR Ry. Co. | 320 |
| 8 | A-2 | EL&RR Ry. Co. | 320 |
| 9 | A-2 | EL&RR Ry. Co. | 320 |
| 10 | A-2 | EL&RR Ry. Co. | 320 |
| 11 | A-2 | EL&RR Ry. Co. | 320 |
| 12 | A-2 | EL&RR Ry. Co. | 320 |
| 13 | A-2 | EL&RR Ry. Co. | 320 |
| 14 | A-2 | EL&RR Ry. Co. | 320 |
| 187 | 42 | H&TC Ry. Co. | 561 |
| 118 (N/W pt.) | C | G&M | 214 |
| 125 | C | G&M | 590 |
| 126 | C | G&M | 577 |
| 124 | C | G&M | 416.66 |
| 123 | C | G&M | 495 |
| 132 | C | G&M | 223 |
| 127 | C | G&M | 640 |
| 124 | C | G&M | 208.33 |

(As described in the Partition Deed (Surface Estate) and recorded in the Deed Records of Roberts County, Texas in Volume 113, Page 203 subject to all reservations stated in said Partition Deed)

| Section | Block | Survey | Acres |
|---|---|---|---|
| 8 | A-1 | EL&RR Ry Co. | 320 |
| 9 (W/pt.) | A-1 | EL&RR Ry Co. | 122 |
| 11 (W/pt.) | A-1 | EL&RR Ry Co. | 67 |
| 12 | A-1 | EL&RR Ry Co. | 320 |
| 13 (W/pt.) | A-1 | EL&RR Ry Co. | 220 |
| 14 (W/pt.) | A-1 | EL&RR Ry Co. | 153 |
| 15 | A-1 | EL&RR Ry Co. | 320 |
| 16 (W/pt.) | A-1 | EL&RR Ry Co. | 245 |
| 17 | A-1 | EL&RR Ry Co. | 320 |
| 18 | A-1 | EL&RR Ry Co. | 320 |
| 19 | A-1 | EL&RR Ry Co. | 320 |
| 20 | A-1 | EL&RR Ry Co. | 320 |
| 21 | A-1 | CFCO | 102.3 |
| 22 | A-1 | CFCO | 102.3 |
| 23 | A-1 | D&SE Ry. Co. | 320 |
| 24 | A-1 | D&SE Ry. Co. | 320 |
| 1 | A-2 | EL&RR Ry. Co. | 320 |
| 3 | A-2 | EL&RR Ry. Co. | 320 |
| 4 | A-2 | EL&RR Ry. Co. | 320 |
| 5 | A-2 | EL&RR Ry. Co. | 320 |
| 6 | A-2 | EL&RR Ry. Co. | 320 |
| 7 | A-2 | EL&RR Ry. Co. | 320 |
| 8 | A-2 | EL&RR Ry. Co. | 320 |
| 9 | A-2 | EL&RR Ry. Co. | 320 |
| 10 | A-2 | EL&RR Ry. Co. | 320 |
| 11 | A-2 | EL&RR Ry. Co. | 320 |
| 12 | A-2 | EL&RR Ry. Co. | 320 |
| 13 | A-2 | EL&RR Ry. Co. | 320 |
| 14 | A-2 | EL&RR Ry. Co. | 320 |
| 187 | 42 | H&TC Ry. Co. | 561 |
| 118 (N/W pt.) | C | G&M | 214 |
| 125 | C | G&M | 590 |
| 126 | C | G&M | 577 |
| 124 | C | G&M | 416.66 |
| 123 | C | G&M | 495 |
| 132 | C | G&M | 223 |
| 127 | C | G&M | 640 |
| 124 | C | G&M | 208.33 |

(As described in the Partition Deed (Water Rights) and recorded in
Deed Records of Roberts County, Texas in Volume 119, Page 435 subject
to all reservations stated in said Partition Deed)

FILED
DONNA L. GOODMAN
County Clerk, Roberts County, Texas
9:00 AM
DEC 2 8 2004
Donna L. Goodman
Deputy

The State of Texas | I, Donna L. Goodman, County
County of Roberts | Clerk, in and for said
County, do hereby certify that the foregoing
instrument with the certificate of authentication
was filed for record in my office the 28 day of
Dec 2004 at 9 o'clock Am and duly
recorded in the Deed record of said County
in vol 04 page 64 Witness my hand and seal
of office of said County at office in Miami,
Texas the day and year last above written.


Clerk, County Court, Roberts County, Texas
By _____ Deputy